FILED
2010 Aug-17  PM 01:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **ANGELA J. KUTZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:**_____ |
| | ) |
| **CITI TRENDS, INC.** | ) **JURY TRIAL DEMANDED** |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Angela J. Kutz, by and through her attorneys

of record, and for her Complaint against the Defendant, Citi Trends, Inc., states as

follows:

## NATURE OF THE CASE

1.    This is a lawsuit brought by the Plaintiff, Angela J. Kutz, who has

been affected by the discrimination alleged in the claims set forth below, seeking

permanent relief from unlawful discriminatory practices involving retention,

compensation, and other terms and conditions of employment in failing to remedy

systemic employment discrimination on the basis of race.  The intentional

practices committed by the Defendant violate Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. §

1981 ("§ 1981").

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this cause of action

pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e, *et seq.*

3.      The defendant is located and/or doing business within this judicial

district and division.  This action is brought within the judicial district wherein the

unlawful employment practices were committed, making venue proper under 28

U.S.C. § 1391(b).

4.      Plaintiff has fulfilled all conditions precedent to the institution of this

action under Title VII.  On July 13, 2009, Plaintiff filed a charge of discrimination

with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge

Number 420-2009-02773.  [Attached hereto as Exhibit "A."] Plaintiff timely files

this action within ninety (90) days of receipt of her Notice of Right to Sue from

the EEOC, dated as having been mailed on May 17, 2010. [Attached hereto as

Exhibit "B."]

## PARTIES

5.      Plaintiff, Angela J. Kutz (hereinafter, "Ms. Kutz" or "Plaintiff"), is an

adult female resident of the state of Alabama.  Plaintiff was employed by the

Defendant at all times material herein.

6.      Defendant, Citi Trends, Inc. (hereinafter, "Citi Trends" or "Defendant"), is a corporation doing business throughout the state of Alabama, including Tuscaloosa County.  At all times material herein, Citi Trends was an employer for the purposes of Title VII.

## STATEMENT OF FACTS

7.      Plaintiff began working at Citi Trends, Inc., on October 31, 2008.

8.      Plaintiff was hired as the First Assistant Manager, and earned $10.00 an hour.

9.      Plaintiff is, and has always been, the only white employee working at her store.

10.     Each store has a Store Manager, who is in charge of the entire store. The Tuscaloosa store also has two First Assistant Managers, a Second Assistant Manager, and a Third Key.

11.     At her interview, Plaitniff was promised health insurance, effective upon hire.

12.     After her hiring, however, Plaintiff was not given the paperwork to enroll in her insurance program.

13.     Most of the other employees in Plaintiff's store received health insurance, including the employees she supervised.

3

14.    In December of 2008, Plaintiff asked the store manager, Kena Cochran, an African-American female, why she had not received insurance.

15.    Plaintiff was told that the paperwork would be in the mail, but no paperwork was sent to her at that time.

16.    Two weeks later, Plaintiff asked Patsy Guthrie, the District Manager and a white female, about the insurance. Ms. Guthrie said she would look into the situation, but she never provided Plaintiff with the promised information. Ms. Guthrie later resigned.

17.    Plaintiff did not receive effective insurance until October 2009, one year after she began working at Citi Trends.

18.    Within Plaintiff's first week in her position at Citi Trends, and while Ms. Cochran was the Store Manager, Cochran changed the schedule so that Plaintiff would have to close every night except one.

19.    This was contrary to what Plaintiff had been told when she was hired, at which point she was told that she would only have to close one or two nights a week.

20.    Plaintiff asked Ms. Cochran about the change because it was an unexpected hardship on Plaintiff, given that Plaintiff has four children between the ages of six and twelve.

4

21.    Ms. Cochran responded that Plaintiff would work whatever times she put on the schedule. Plaintiff reminded Ms. Cochran that that wasn't what she had been told when she was hired.

22.    Ms. Cochran responded, "Well, let's talk about when I hired you. The reason that I wanted you here is because you're white.  That's the only reason why I hired you."

23.    Plaintiff asked her why that was, and she said, "Megan [Mott] was fired, and I had to have somebody to replace her."

24.    That night, Plaintiff called the District Manager, Patsy Guthrie, and complained about Ms. Cochran's racial comments.  Ms. Guthrie never responded to Plaintiff, and Guthrie resigned the following day.

25.    After that incident, Ms. Cochran gave Plaintiff excessive work compared to the other First Assistant Manager. Ms. Cochran and the other First Assistant, the Second Assistant, and the Third Key, started doing very little work.

26.    Ms. Cochran would give the Third Key, Jasmine Lewis, time off on the weekends.  Ms. Lewis would then babysit Ms. Cochran's children, allowing Ms. Cochran to go out late at night.

27.    Even on holidays such as New Year's Eve and New Year's Day, Plaintiff would close the store and be scheduled to work all day the following day.

5

28.    Plaintiff was the only person who worked on New Year's Day aside from Ms. Lewis, and Lewis didn't come in until two or three o'clock in the afternoon.

29.    On New Year's Eve, Plaintiff complained about having to work late that night, and then come early the next day.

30.    Ms. Cochran crudely responded, "You just want to leave so you can go get a dick in your mouth."

31.    Ms. Cochran made this statement in front of Johnnie LNU ("Last Name Unknown"), a floor associate, Sherika LNU, another floor associate, and Patrikia Wells, the Second Manager.  Everyone laughed in response to Ms. Cochran's comment.

32.    That comment distressed Plaintiff so much that she turned around and walked up to the registers.  Ms. Cochran followed her up to the registers, and said, "I wish you'd quit.  I hate working with you."

33.    The next day, Plaintiff called Tracy Bogan, an African-American female, and the new District Manager, to complain about Ms. Cochran's comments.

34.    Plaintiff complained about Cochran's desire for Plaintiff to quit, the way she had responded when Plaintiff complained about working New Year's

Eve, and the racist comments Cochran had made.

35.   Ms. Bogan never followed up with Plaintiff regarding these concerns.

36.   Plaintiff worked whatever schedule Ms. Cochran created.  She closed at night, and she carried the majority of the store workload.

37.   Such excessive work became increasingly difficult for Plaintiff when her grandmother had a stroke, and Plaintiff needed to go to Mississippi to visit her.

38.   Ms. Cochran would not give Plaintiff time off to go to Mississippi to visit her ailing grandmother.

39.   Plaintiff called Ms. Bogan, and Ms. Bogan instructed Ms. Cochran to allow Plaintiff time off to visit her grandmother.

40.   As a result, Ms. Cochran gave Plaintiff the time off, but warned her not to call the District Manager again or "it would be [her] job." Plaintiff took this to mean that she would be fired.

41.   Cochran threatened Plaintiff's job for complaining to her District Manager, despite the fact that Cochran would allow African-American employees time off for menstrual cramps or coughing at work.

42.   Furthermore, Ms. Cochran would leave whenever she wanted to, and Plaintiff always took up the slack for her.

43.   On March 21, 2009, Plaintiff's uncle died.  Plaintiff went to the

funeral, and when she returned on March 24, 2009, all the managers, including Ms. Cochran, had been fired by Luther Howard, the new District Manager.

44.     Since Plaintiff began working at Citi Trends in 2008, the Store Manager position has been vacant twice.

45.     Plaintiff let the new District Manager, Luther Howard, an African-America male, know both times that she, Plaintiff, was interested in the position.

46.     Mr. Howard informed Plaintiff that she could not be promoted because the store had approximately $100,000 in "shrink," meaning the store was missing either money or inventory due to theft or mismanagement.

47.     The "shrink" problem at the store was so bad that Mr. Howard fired the entire management team except Plaintiff and Ms. Patton, who had only been at the store for two weeks.

48.     Mr. Howard informed Plaintiff that he thought she knew something about who was responsible for the shrinkage, but wasn't telling him.

49.     Soon after, however, Mr. Howard informed Plaintiff that she was in line for the Store Manager position.

50.     Two days later, Keith LNU from Loss Prevention arrived at the store. Keith informed Plaintiff that she was up for a big promotion to Store Manager.

51.     Keith asked some questions about why the store had so much shrink.

8

Plaintiff didn't know anything first-hand, but told him that she had heard about Ms. Cochran, Ms. Lewis, and Johnnie LNU taking store merchandise out the back door in boxes.

52.     Plaintiff had heard this from Starr Hall, a customer.  Ms. Hall informed Plaintiff that the named employees were selling merchandise to her that had been taken from the store via the back door.

53.     Plaintiff gave Keith Ms. Hall's name and phone number.  Ms. Hall had called Mr. Howard and informed him of what she had shared with Plaintiff, and added that Ms. Cochran and her cohorts had engaged in this behavior while Plaintiff wasn't in the store.

54.     A couple of days later, Mr. Howard arrived at the store, and informed Plaintiff that she had been up for a big promotion, but didn't get it, because she knew something and wasn't telling.

55.     Mr. Howard put Plaintiff on "Final Warning."  Plaintiff  had never even been put on a "first" warning before being put on "Final Warning."

56.     Mr. Howard claimed that she was being put on "Final Warning" for spreading rumors. The rumors Mr. Howard referred to were the questions Plaintiff had answered from Keith, the Loss Prevention employee.

57.     Soon thereafter,  Mr. Howard hired Belinda Henderson, an African-

America female.  Mr. Howard then informed Plaintiff that she was, in fact, going to be named Store Manager.  Mr. Howard claimed that Ms. Henderson was there to train Plaintiff to be Store Manager.

58.    Ms. Henderson did train Plaintiff, but two weeks later, Ms. Henderson was officially made Store Manager.

59.    The second time the Store Manager position came open, however, Mr. Howard made Valerie Magritte, another African-America female, Store Manager.

60.    At that time, the Store Manager, the other First Assistant, the Second Assistant, and the Third Key, were all African-Americans.  All of these employees were also provided health insurance.

61.    All of these employees were hired after Plaintiff.

62.    Even though Plaintiff made $10.00 an hour as a First Assistant Manager, Cindy Patton, who was the Second Assistant Manager, who was hired after Plaintiff, in February 2009, and who is African-American, was also paid $10.00 an hour.

63.    Plaintiff supervised Ms. Patton and had more responsibilities than her.

64.    Torri Greer, who had the exact same set of duties as Plaintiff, is

10

African-American, and was also a First Assistant Manager, made $11.00 an hour.

65.     Additionally, Ms. Greer received the weekends off.  Plaintiff rarely got weekends off.

66.     Some time after Ms. Magritte was hired, Plaintiff suffered from kidney stones.

67.     After Plaintiff informed Citi Trends that she was unable to work due to her kidney stones, Ms. Magritte stated that she was going to "fire that white girl" if she did not come in for her next scheduled shift.

68.     On June 20, 2009, Plaintiff had a conversation with Ms. Magritte, and asked her if she could work Saturday and be off Sunday.  Ms. Magritte said that she did not have a problem with that.

69.     On June 25, 2009, when Plaintiff arrived at work, she found that Ms. Magritte had scheduled Plaintiff to work on Sunday so that Ms. Greer could be off.

70.     Plaintiff asked Ms. Magritte about this, and Ms. Magritte responded, "I make the schedule as I see fit and you're gonna work it."

71.     Ms. Magritte changed the schedule again before the day was over, and Plaintiff called Mr. Howard and left him a message.

72.     After Plaintiff called Mr. Howard, Ms. Magritte said, "You're gonna

11

work the schedule or it's your job." Magritte proceeded to raise her voice at Plaintiff.

73.     Magritte had been told by one of her supervisors that Plaintiff was a "different" employee because Plaintiff had been passed over for a promotion.

74.     On June 25, 2009, Mr. Howard finally returned Plaintiff's call.

75.     Plaintiff informed him that Ms. Magritte was violating policy by giving her keys to someone who was not a manager.  Plaintiff had seen Ms. Magritte give her keys to her husband so that he could make copies.

76.     Plaintiff also informed Howard that she had seen Ms. Magritte take a $20 bill out of the register and give it to her husband.

77.     Plaintiff also informed him that Ms. Magritte had violated policy by leaving money in the register overnight.

78.     The following day, June 26, 2009, Ms. Magritte was rude and unprofessional toward Plaintiff.

79.     Magritte persisted in trying to agitate Plaintiff, and attempted to provoke arguments. Magritte told Plaintiff: "you're off on Sunday, but you're closing the store on the Fourth [of July]."

80.     Plaintiff was off of work Saturday, Sunday, and Monday, June 27 through 29, 2009.

81.     When Plaintiff returned to work on June 30, 2009, Ms. Magritte
spoke to her harshly.  At the end of the day, she said, "You're working tomorrow."

82.     Plaintiff had no notice that she was to work on July 1, 2009, had no
childcare, and had an appointment she was required to attend to.

83.     Since she began working at Citi Trends, Plaintiff has repeatedly been
told that she is not permitted to take her fifteen (15) minute breaks.  Plaintiff
clocks out for her breaks, but is not permitted to actually take them.

84.     Plaintiff needs that time to call her children at home and to handle
personal matters, but was told that she can only call her children during her lunch
break.

85.     Plaintiff has not been promoted since she began working for Citi
Trends.

## COUNT ONE
## TITLE VII - RACE DISCRIMINATION

86.     Plaintiff adopts and re-alleges each and every allegation contained in
this Complaint as if set out anew herein.

87.     Plaintiff was in a protected class and came within coverage of Title
VII.

88.     In express violation thereof, Defendant discriminated against Plaintiff

in the terms and conditions of her employment based on compensation, retention, and promotion.

89.     Plaintiff was subjected to a hostile work environment because she was forced to endure the humiliation and embarrassment of Defendant's racist remarks and actions, and disparate treatment. Defendant did not treat black employees in a similar way.

90.     Plaintiff was further subjected to adverse employment action when Defendant repeatedly failed to promote her to the position of store manager.

91.     Plaintiff has satisfied all administrative prerequisites prior to bringing this action.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

      a.     Placement in the position(s) in which she would have worked absent Defendant's discriminatory treatment; or in lieu thereof, front pay;

      b.     All back pay from the date of Defendant's discriminatory conduct;

      c.     Injunctive relief;

      d.     Pre-judgment interest;

e.    Attorneys' fees;

f.    Costs;

g.    Compensatory damages for loss of wages, loss of benefits, including, but not limited to, vacation, health insurance, and other benefits, mental anguish, emotional distress, both past and future;

h.    Punitive damages; and

i.    Such other legal or equitable relief as may be appropriate to effectuate the purposes of Title VII or to which she may be entitled.

## COUNT TWO
## TITLE VII - RETALIATION

92.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

93.    In taking the above-described actions, Defendant intentionally and wrongfully retaliated against Plaintiff for her complaints of discrimination in violation of Title VII, to include, but not be limited to, denying her deserved promotions.  Such retaliation was taken with malice or reckless indifference to the federally-protected rights of Plaintiff.

94.     As a result of this retaliation, Plaintiff was caused to be injured and damaged; to have her career significantly and adversely impacted; to forego compensation and benefits; and to endure mental anguish, emotional distress, humiliation, and embarrassment.

95.     Plaintiff has satisfied all administrative prerequisites prior to bringing this action.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a.     Placement in the position(s) in which she would have worked absent Defendant's discriminatory treatment; or, in lieu thereof, front pay;

b.     All back pay from the date of Defendant's discriminatory conduct;

c.     Injunctive relief;

d.     Pre-judgment interest;

e.     Attorneys' fees;

f.     Costs;

g.     Compensatory damages for loss of wages, loss of benefits, including, but not limited to, vacation, health

16

insurance, and other benefits, mental anguish, emotional

distress, both past and future;

h.      Punitive damages; and

i.      Such other legal or equitable relief as may be appropriate

to effectuate the purposes of Title VII or to which she

may be entitled.

## COUNT THREE
## § 1981 - RACE DISCRIMINATION

96.     Plaintiff adopts and realleges each and every allegation contained in

this Complaint as if set out anew herein.

97.     In taking the above-described actions, Defendant intentionally and

willfully discriminated against plaintiff due to her race, treated her disparately,

denied her promotions, and subjected her to a hostile work environment.

98.     Defendant's actions were in violation of § 1981, and were taken with

malice or reckless indifference to the federally-protected rights of Plaintiff.

99.     As a proximate consequence of the violations of § 1981 by

Defendant, Plaintiff has suffered and will continue to suffer damage to her

professional life, future pecuniary losses, emotional pain, inconvenience, mental

anguish, loss of enjoyment of life, and non-pecuniary damages.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

  a. Placement in the position(s) in which she would have worked absent Defendant's discriminatory treatment; or, in lieu thereof, front pay;

  b. All back pay and benefits denied to her due to Defendant's discriminatory conduct;

  c. Pre-judgment interest;

  d. Attorneys' fees;

  e. Costs;

  f. Punitive damages to deter such conduct in the future;

  g. Compensatory damages for loss of wages, loss of benefits, including, but not limited to, vacation, health insurance, and other benefits, mental anguish, emotional distress, and embarrassment, both past and future; and

  h. Such other legal or equitable relief, including injunctive relief, as may be appropriate to effectuate the purposes of § 1981 or to which she may be entitled.

## **COUNT FOUR**

## § 1981 - RETALIATION

100.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

101.    In taking the above-described actions, Defendant intentionally and wrongfully retaliated against Plaintiff for her complaints of discrimination in violation of § 1981, to include, but not be limited to, denying her deserved promotions.  Such retaliation was taken with malice or reckless indifference to the federally-protected rights of Plaintiff.

102.    As a result of this retaliation, Plaintiff was caused to be injured and damaged; to have her career significantly and adversely impacted; to forego compensation and benefits; and to endure mental anguish, emotional distress, humiliation, and embarrassment.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

        a.    Placement in the position(s) in which she would have worked absent Defendant's discriminatory treatment; or, in lieu thereof, front pay;

        b.    All back pay and benefits denied to her due to Defendant's discriminatory conduct;

19

c.      Pre-judgment interest;

d.      Attorneys' fees;

e.      Costs;

f.      Punitive damages to deter such conduct in the future;

g.      Compensatory damages for loss of wages, loss of

        benefits, including, but not limited to, vacation, health

        insurance, and other benefits, mental anguish, emotional

        distress, and embarrassment, both past and future; and

h.      Such other legal or equitable relief, including injunctive

        relief, as may be appropriate to effectuate the purposes of

        § 1981 or to which she may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL
CLAIMS SO TRIABLE.**

                              **Respectfully submitted,**

                              _____

                              **John D. Saxon**
                              **Alabama Bar No. ASB-3258-071J**
                              **Frelon Abbott, III**
                              **Alabama Bar No. ASB-9795-E60A**
                              **Attorneys for Plaintiff**

**OF COUNSEL:**

**JOHN D. SAXON, P.C.**
**2119 3rd Avenue North**
**Birmingham, AL 35203**
**Tel:**        **(205) 324-0223**
**Fax:**        **(205) 323-1853**
**Email:**      jsaxon@saxonattorneys.com
               tabbott@saxonattorneys.com

**PLAINTIFF'S ADDRESS:**

Angel J. Kutz
16705 Rush Drive
Northport, Alabama 35457

**PLEASE SERVE DEFENDANT BY**
**CERTIFIED MAIL RETURN RECEIPT REQUESTED:**

**CITI TRENDS, INC.**
c/o C T CORPORATION SYSTEM
2 North Jackson Street., Suite 605
Montgomery, Alabama 36104

21